## LEBANON *v.* PLAINFIELD.

Where in a settlement case the question was whether the pauper was taxed for his poll, in 1797, in the defendant town, and a book of imperfect records of that town was admitted, containing town papers, arranged without order as to dates, and showing various lists of taxes from 1774 to 1799, and among them a list without any date, by which it appeared that the pauper was taxed for his poll — it was *held*, that there was no error in admitting the evidence, although the bearing might be remote.

It was also held that there was no error in the instruction to the jury that they were at liberty to consider whether or not the undated tax list was not that of 1797.

ASSUMPSIT, for the support of Lucinda McAllaster, a pauper, from April 6 to August 24, 1857, at $20. Plea, the general issue.

It was agreed by the parties that said Lucinda was a pauper, standing in need of relief, and that the supplies as charged had been furnished by the plaintiff, and that proper notices, under the statute, had been served upon the defendant according to law, and that the sum charged by the plaintiff was reasonable; that Lucinda is the daughter of one Isaac Corey, late of said Plainfield, deceased; that she has no settlement in this State, unless she derived one from her said father; and that Corey had never acquired any settlement in this State, unless he did so in said defendant town, between the years 1796 and 1807; that Corey resided in said Plainfield from 1774 to 1806 inclusive, and that from 1798 to 1803 inclusive, he was taxed there for his poll and some other property, and paid his taxes for those years, and that for the years 1804-5-6 he was not taxed.

The plaintiff contended that Corey gained a settlement in Plainfield, by residence and ownership of real estate of the value of $150, and paying all taxes duly assessed on him and his estate, for four years in succession, and also

by residence and taxation upon his poll for seven years in succession.

It appeared by the records of Plainfield that Corey was taxed in 1798 for one poll, one acre tillage, two acres mowing, one cow; 1799 for one poll, one acre tillage, one acre mowing, one cow; 1800 for one poll, one cow, two neat stock, ten acres unimproved land; 1801 for one poll, two acres mowing, one cow, two neat stock; 1802 there was no full invoice for the year, part of an alphabetical invoice beginning with K; 1803 he was taxed for one poll and one cow.

It also appeared that from 1794 to 1806, Corey was possessed of a small wooden framed house, boarded and shingled, but not clapboarded, lathed and plastered, containing three rooms and a chimney, of a small log barn, and of a small amount of real estate, which he cultivated, raising thereon some produce which was consumed in his family.

The plaintiff produced a book containing miscellaneous papers relating to town affairs, which was admitted to be a book of imperfect records belonging to the town of Plainfield. The book contained various records of tax lists between the years 1774 and 1799, and the papers were bound in the volume without regard to order of dates. This volume contained the only records that could be found of any invoice or taxation in the town of Plainfield prior to 1798. It was agreed that the other records of said town, prior to 1798, are lost or destroyed, and there was no evidence as to how they were lost or destroyed. The plaintiff proposed to show by this record that Corey was taxed in said Plainfield certain years prior to 1797, as tending to show a taxation in that year; to which the defendant objected, but the court admitted the evidence, whereupon it appeared that he was taxed in the years 1774, 1775, 1776, 1786, and 1787, and for his poll only one other year, the date of which did not appear. The court

instructed the jury that they were at liberty to consider whether or not the tax-list last aforesaid was not the list of 1797. It was entitled, "list of taxes for the year ensuing," and was so bound in the volume that the paper immediately following the list was dated 1786. The paper immediately preceding said list was dated 1781. There was another list of persons in another place, taxed, entitled, "county rate list," which had no date, and upon which the name of Corey did not appear. There was no other tax-lists in the book than the aforesaid, and there was no other evidence relating to the date of those lists.

The plaintiff offered other records of the town of Plainfield, by which it appeared that in 1797 the town voted to raise £20 to defray town expenses, and £200 to repair highways. To this evidence the defendant excepted, but the court admitted it.

The court also permitted the plaintiff to show that in the year 1797 the county tax of that year was paid by the town of Plainfield to the treasurer of the county of Cheshire; to which the defendant excepted.

A verdict being returned for the plaintiff, the defendant moved to set it aside.

*George & Foster*, for the defendants.

Corey resided in Plainfield from 1774 to 1806 inclusive, thirty-three years; that is, twenty-three years prior and nine subsequent to 1797. The question for the jury was, whether he was taxed in the year 1797. The imperfect records of Plainfield show that he was taxed prior to 1797, in the years 1774, 1775, 1776, 1786, 1787, and one other year, the date of which does not appear. Those records cover a period of twenty-five years, from 1774 to 1799, and exhibit no more than seven tax lists; namely, those of 1774, 1775, 1776, 1786, 1787, one other list, bearing no date, entitled "list of taxes for the year ensuing," on all of which lists Corey's name appears, and one other list,

bearing no date, and entitled "county rate list," on which his name does not appear. The records, therefore, present no evidence of Corey's taxation during nineteen of the twenty-five years, unless it may be found in the "list of taxes for the year ensuing," which year may be either one of those nineteen years. The "list of taxes for the year ensuing" is bound in the volume between papers of the dates 1781 and 1786, and there are no tax-lists in the book bearing a later date than the year 1787. If any inference can be drawn from the location of this paper, it would seem to be that it related to a period anterior to 1787. During the nine years of his residence in Plainfield subsequent to 1797, the case finds that he was taxed, from 1798 to 1803 inclusive, six years, and that in the remaining three years he was not taxed. Considering, then, the admitted fact that, during three at least of the years of Corey's residence in Plainfield, he was not taxed, and that his name does not appear upon the undated " county rate list," can the jury be permitted, in the absence of all other evidence, to find that the "list of taxes for the year ensuing" is a record of the year 1797 ? " The burden of proving taxation is always upon the party alleging it, whatever the lapse of time." *Pitts-field* v. *Barnstead*, 38 N. H. 115. The assessment being a matter of record, the records, if in existence, are the best and only evidence. If lost, other evidence may be introduced to supply the deficiency. *Ibid.* But there can be no presumption of taxation. Here the case shows no evidence of taxation in 1797 *dehors* the record. There is nothing whatever to identify the undated papers, and the jury should have been told to disregard them. Clearly they are not the *whole* record of the matter to which they relate. There was at one time something else connected therewith, by which the "county rate list" and the "list of taxes for the year ensuing" were shown to bear a certain date. The whole essential part of the record is

lost. The payment proves nothing, and tends to prove nothing, and the plaintiff should have been required to produce secondary evidence. The case finds that about the year 1797 Corey possessed very little property; but neither property nor residence furnish any presumption of taxation, nor aid the imperfect records. *Weare* v. *New-Boston*, 3 N. H. 203; *Pittsfield* v. *Barnstead.* The fact that in 1797 the town voted to raise a tax, and that the town paid to the county treasurer a county tax for that year, is incompetent and immaterial. It furnishes no evidence that Corey was taxed, and the jury should not have been permitted to consider it. In order to gain a settlement by the tenth mode prescribed in the 1st section of chapter 65, Revised Statutes, it is essential that the poll should be taxed for seven years in succession. " This provision was introduced with the intent to enable towns to prevent persons of very little property gaining a settlement, by omitting to tax their polls." In accordance with the understanding of that intent has been the practice of selectmen in the exercise of their discretion and discharge of their duty. *Burton* v. *Wakefield*, 4 N. H. 47; *Weare* v. *New-Boston* and *Pittsfield* v. *Barnstead,* before cited; *Thompson* v. *Newton*, 21 N. H. 595, and numerous other cases.

These pieces of evidence, being individually incompetent, have no greater efficacy taken together, and their introduction would only serve to embarrass and mislead the jury.

*Daniel Blaisdell,* for the plaintiff.

By the act of February 8, 1791, it was provided that the selectmen shall have their assessments recorded by the town-clerk in the book of records belonging to such town, or shall leave an attested copy with him seasonably for that purpose; and a copy of the invoice from which the assessment was made shall be recorded or left with the town-clerk in manner aforesaid, that the inhabitants

or others rated may inspect the same. N. H. Laws, ed. of 1815, 258. This provision has remained in force ever since, with some modifications. Comp. Stat., ch. 45, sec. 6.

If the town of Plainfield had complied with the requirements of the statute, and duly preserved her records, they would at once have afforded the evidence to show whether or not Isaac Corey was taxed in 1797. This she has not done; the records, of which she was the proper and only keeper, have been lost or destroyed, and certainly every inference that the law will warrant may properly be taken against her. It may be well said that, if the records would have shown that Isaac Corey was not taxed in 1797, they would have been found, or would have been more carefully preserved. Lebanon had no control over them, nor any power to preserve them. Plainfield had both; and, if ordinary care had been observed, they would not have disappeared, certainly not in a way which now leaves no trace of them, or of the manner in which they were removed. But they have been lost or destroyed, and Lebanon, after the lapse of more than sixty years, is compelled to resort to secondary evidence to prove what would have been so easily proved by the record of the invoice and taxes of 1797. The consideration of the rapidity with which ordinary events pass from human recollection, and all trace of them is lost, unless preserved with extraordinary care, affords the strongest confirmation of the wisdom of the statute provision, and may well occasion regret that the law does not subject the negligent town to the presumption of taxation after twenty years. But, certainly, slight evidence, any fact which might tend to make it more probable than otherwise that Isaac Corey was taxed in Plainfield in 1797, should be received as competent. The evidence that the town voted that year to raise taxes to defray town expenses, and to repair highways, and that the county tax was duly paid, was properly admitted as laying

the foundation for the conclusion, from the other facts proved, that he was taxed that year. It having been shown that taxes were voted that year, and the county tax paid, the plaintiff might well ask the jury to consider the probability that the undated tax list was that of 1797.

The book of imperfect records, extending from 1774 to 1799, contains all the remaining evidence relating to the individuals taxed prior to 1798, including tax lists for the five years 1774, 1775, 1776, 1786 and 1787, and the list for one year undated. In each of these lists the name of Isaac Corey appears as one of the individuals taxed; and, if it can be said that the fact of his name appearing among those taxed each year, when any dated list remains, furnishes no evidence that he was taxed the other years, the undated list certainly furnishes evidence that he was taxed one other year,—one of the nineteen years between 1774 and 1798, in which no dated list is found. It is very true that it does not show conclusively which year, but it is submitted that it was properly left to the jury to consider whether or not it might be 1797. Suppose that, instead of one, there had been eighteen lists without date, leaving but one year more than the number of tax lists, could it be said, notwithstanding the failure of the town to preserve her records, and the difficulty of making other proof in consequence of the lapse of time, that there was no evidence competent to be submitted to the jury for them to consider whether some one of the eighteen undated lists might not be that of 1797? If so, then it might as well be said that, if there were undated lists equal to the whole number of years, they would furnish no competent evidence for any particular year, because a list bearing the date of the precise year for which the proof was to be made was not produced. And then it would follow that, if there had been a list with the date for every year except 1797, and a list without date which could apply to no year except that,

still it could not be submitted to the jury to say whether or not it might be the list of that year. This would be requiring a degree of certainty which, it is confidently believed, cannot be demanded by any sound rule of evidence.

It may be true that the evidence from the undated list was slight, but, from the nature of the case, the evidence to be weighed by the jury must be slight, the record having been lost or destroyed, and so long a period of time having elapsed since the transaction; but the undated tax list, including the name of the pauper's ancestor, which might apply to the year for which he must have been taxed in order to gain a settlement by seven years' continuous taxation and payment, as well as to any other one of the nineteen years, the admitted fact of his residence in the town since 1774, and that he appears to have been taxed whenever any tax list could be found, unless we except the undated county tax list, as well as the additional fact that he was the owner of real and personal estate in the town at the time, certainly present a case so strong in favor of his having been taxed in Plainfield for the year 1797, that nothing short of an inflexible rule of law could justify a contrary conclusion.

It is, therefore, submitted that the volume of imperfect records of Plainfield, including the undated tax list, and also the records by which it appeared that the town voted in 1797 to raise twenty pounds to defray town expenses, and two hundred pounds to repair highways, as well as the evidence of the payment of the county tax for the same year, were all properly admitted as evidence under the instructions of the court.

BELLOWS, J. The book is admitted to be a book of records, although imperfect, belonging to the town of Plainfield, containing miscellaneous papers relating to town affairs. Among others it contained various records

of tax lists between 1774 and 1799, which were bound in the volume without regard to the order of dates; and this contained all the records that could be found of any invoice or taxation prior to 1798. No objection seems to have been made to the book on the ground that it was not a record or proof of what it contained, so far as the fact so proved was admissible; and, if there had been such objection, it would not probably have availed the defendant, as it is admitted that they were records, although imperfect, and nothing is stated, we think, that authorizes the court to exclude them from the jury, as not competent to be considered. As to the weight to be given to them, that is for the jury to determine.

To prove a settlement of the pauper in Plainfield, by a residence, taxation for his poll, and payment of all taxes on his poll and estate for seven years in succession, the plaintiff town relies upon the years 1797 to 1803 inclusive; and the records show such residence and taxation for the years 1798 to 1803 inclusive, and for what property the pauper was so taxed, and it was agreed that he paid those taxes. For the seventh year the plaintiff relies upon the year 1797, but as to that the records do not show a taxation, unless an undated list is found to be the list for that year.

The point, then, is, was the pauper taxed in 1797? For most of the time for many years prior to 1798 the record of taxes is wholly wanting. But the plaintiff was permitted to show, by the imperfect records produced, a taxation of the pauper in 1774, 1775, 1776, 1786 and 1787, and also that he was taxed for his poll, alone, one other year, the date of which did not appear. This was admitted, subject to exception, and the question is, whether it was rightly admitted. In deciding a question of this sort, the judge who tries the cause will properly, in the exercise of his discretion as to the materiality of evidence offered, take into consideration the remoteness of the

time when the matters in question occurred, and, in the absence of regular record evidence, and of the testimony of living witnesses, he may properly admit evidence that, in respect to recent transactions, might well be regarded as too remote to be material. And such, we apprehend, is the course of all courts of justice, taking care to exclude such matters of doubtful materiality as are calculated to mislead the jury.

In this case the records not showing explicitly that the pauper was taxed in 1797, and the loss of the records of that year being admitted, unless the undated list be for that year, the plaintiff is obliged to resort to secondary evidence. As bearing upon this point, then, would it have been competent to show that for many years immediately preceding 1797, without interruption, as well as for many years next following that date, he was taxed for his poll? We think it would be, for it would tend to show that he was a resident of the town in 1797, was known to the assessors, and in a situation to be taxed. If portions of the records were missing, but it appeared that he was taxed in all those years when they were preserved, the legal tendency of the evidence would be the same, though the weight would be diminished. Again, upon the question whether the undated list was that of 1797; to show that the lists of all the other years were there, would be well nigh conclusive in the minds of a jury, and of course to show that most of the others were preserved, as, for example, all but two or four, would be matter proper for the consideration of the jury, diminishing in weight as the number of the missing years increased, but still having a legitimate bearing, more or less remote.

Then, as to the instructions of the court that they might consider whether or not the undated list was that of 1797, we think there was no error. The jury might well consider and weigh the circumstances disclosed bearing on this point—such as the position of the list in the book;

Lebanon *v.* Plainfield.

its internal evidence arising from a comparison of the invoice with those of other years; the number of other years that were missing, and the facts bearing directly on the point whether the pauper was or was not actually taxed that year.

It is true that this evidence may have been very remote, and so remote that the judge might properly have rejected it upon that ground; but of that the judge who tried the cause can alone decide, he having before him the means of estimating its bearing in connection with the other evidence in the cause. Had the records not been offered, would it not have been a legitimate argument that there was no proof of residence or taxation at all prior to 1798? We think it would have been, and, under some circumstances, must have been effective; and, to meet this, the records were admissible.

The objection here is not that there was no evidence on which the jury could find a taxation in 1797; nor is there any objection to the instructions of the court on that point, and therefore it must be presumed that they were correct. It is not to be assumed that such a point was made, or that all the evidence bearing upon it was reported, but it is simply a question whether there was error or not in admitting this evidence.

The admission of the record of the "county rate list," with the other records, is, for the reasons we have suggested, no cause for setting aside the verdict; and, whether material or not, the court cannot see that the defendant was likely to be prejudiced.

The proof adduced from these records of the raising of money by Plainfield in the year 1797, was competent for the purpose of showing that there was occasion to make an assessment; and so in relation to the county tax of that year.

The exceptions are, therefore, overruled, and there must be                                    *Judgment upon the verdict.*